IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01760-WYD-MEH

THE MARIANIST PROVINCE OF THE UNITED STATES, INC., SOCIETY OF MARY, PROVINCE OF ST. LOUIS, and at other times, RONCALLI HIGH SCHOOL,

    Plaintiff,

v.

CENTURY INDEMNITY COMPANY in its own capacity and in its capacity as successor to CCI Insurance Company as successor to INSURANCE COMPANY OF NORTH AMERICA,

    Defendant.

---

### ORDER RE: PLAINTIFF'S MOTION TO COMPEL

---

Before the Court is Plaintiff's Motion to Compel Discovery [filed August 20, 2010; docket #123]. The matter is referred to this Court for disposition. (Docket #124.) The motion is fully briefed, and oral argument would not assist the Court in its adjudication. For the following reasons, the Court **grants in part and denies in part** Plaintiff's motion.

### I.    Background

The Plaintiff initiated this action on August 18, 2008. Essentially, Plaintiff claims Defendant engaged in a course of conduct whereby it delayed payment of benefits and refused to provide appropriate insurance coverage for the Plaintiff's defense in (underlying) legal proceedings naming the Bishop of Pueblo and The Marianists as defendants. Defendant denies that (1) any coverage is afforded under the applicable policies because the underlying plaintiffs' damages, as reflected in their settlements, were not caused by an "occurrence" as that term is defined in the policies, (2) it received timely notice of any alleged "occurrence," and (3) it received full cooperation from the Plaintiff.

This dispute arises from the Defendant's objections to Plaintiff's discovery requests concerning the law governing Defendant's insurance policies and information regarding the supposed "public impact" of Defendant's alleged practice of requiring its insureds in clergy abuse cases to contribute to settlements. Plaintiff argues that the information requested is discoverable and that the "public impact" information is relevant to its claims under the Colorado Consumer Protection Act. Defendant counters that the burden and expense of the requested discovery significantly outweighs its "minimal" relevance.

The scope of evidence that is subject to discovery under the federal rules is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1) (2010). At the same time, the federal rules require a court to limit the frequency or extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

First, with respect to Plaintiff's request to compel a response to its Interrogatory No. 4, the Court agrees with Defendant that the interrogatory seeks a legal conclusion and, thus, improperly requests an attorney's work product. Thus, the Plaintiff's motion is **denied** with respect to Interrogatory No. 4.

The remaining discovery requests involve Plaintiff's attempt to obtain information from the

2

Defendant following an alleged comment by Defendant's adjuster for The Marianists' claim, Eileen Voegele, stating that it is Defendant's practice to "require" its insureds in clergy abuse cases to agree to contribute to settlements before engaging itself in the settlement negotiations. Plaintiff argues that such conduct demonstrates not only bad faith, but also implicates the Colorado Consumer Protection Act ("CCPA") and the Colorado Unfair Claims Deceptive Practices Act. Through its Interrogatories No. 9, 10, 12 and 13 and Request for Production No. 5, Plaintiff seeks all information and claims files for Defendant's insured religious organizations accused of negligence in the retention, supervision or training of a subordinate who engaged in improper sexual activity, which are required by Defendant to contribute toward settlement or judgment in the litigation.

Defendant denies that it has any such black and white policy, but rather, each case is handled based on the dynamics presented therein, and ultimately, a settlement may involve contribution by the insured, and it may not. Defendant also counters that production of such information and files would be severely time-consuming and costly requiring "hundreds if not thousands of man hours" to search each claim file to identify similarly situated insureds. Moreover, Defendant expresses its concern over the privacy rights of its insureds, stating that it would likely need to get each insured's permission to disclose the requested information.

By arguing the merits of Plaintiff's bad faith and CCPA claims, Defendant contends that the requested information holds little relevance in a CCPA "public impact" analysis because each claim file is handled under its own unique circumstances, and the information holds no relevance in the bad faith claim because Defendant intends to succeed on the coverage issue. Plaintiff contends that production of the requested information (specifically, all claims files involving allegations of sexual misconduct against religious organizations for the time period September 2005 to August 2008) is

3

absolutely essential to the prosecution of the CCPA claim, and without the information, Plaintiff would likely be unable to pursue such claim.

The fundamental problem with the scope of Plaintiff's motion is that, at the trial of this matter, I cannot fathom Judge Daniel permitting the Plaintiff to put on evidence of dozens of unrelated claims by unrelated insureds and litigating whether, in each of those cases in which the insured paid some amount toward settlement, (1) Century's participation in funding a settlement was conditioned upon the insured's financial participation, and (2) Century had a factual basis to support a defense that the insured had prior knowledge of sexual misconduct. These two disputed facts alone, in the present case, have precipitated many thousands of dollars of attorney time, and, at the close of a very busy discovery schedule, they remain hotly disputed. If such facts are so disputed in the present case in which extensive discovery has taken place, I cannot see how, at the trial of this case, the parties could possibly litigate those two questions involving dozens of other case files in any way that would be efficient and effective. This is the essence of the mini-trial scenario that the judiciary endeavors to avoid. *See United States. v. Beltran-Garcia*, 338 F. App'x 765, 772 (10th Cir. 2009) ("The restrictions in Rule 608 exist to prevent mini-trials on side issues that make it more difficult for the jury to render an impartial decision."); *see also Westport Ins. Corp. v. Wilkes & McHugh, P.A.*, 264 F.R.D. 368, 373 (W.D. Tenn. 2009) (discovery into other insureds' claims denied because of the burden, the "'existence of variables [that] make the possibility of relevance too remote,'" the inevitability of mini-trials or "'unbearable side litigation'" concerning the manner in which the other claims were handled, and the need to set "'rational limits'" on complex litigation) (citations omitted).

For these reasons, I will not require production of the actual claims files (which production,

4

incidentally, would entail disclosure of extremely private and sensitive information involving allegations of sexual misconduct, some of which may involve minors), but I will order Defendant to complete the search that Defendant's representative, Ms. Voegele, initiated (and which resulted in Voegele Deposition Exhibit #1), and for any other similarly-situated claims adjuster(s),[1] identify all relevant[2] files during the time period September 2005 to August 2008. Defendant will then produce to Plaintiff, for each such file, the information contained in Voegele Deposition Exhibit #1 together with information as to whether, for each file, Defendant asserts it had reason to believe the insured had notice of the potential for sexual misconduct prior to the actions that resulted in the claim being filed, if it may so discern from the file.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Compel Discovery [filed August 20, 2010; docket #123].

Dated at Denver, Colorado, this 28th day of October, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[1] The hearing in this case indicated that there were from two to four others who, like Ms. Voegele, handled such claims during the relevant time period.

[2] *I.e.*, involving allegations of sexual misconduct involving religious organizations.

5